**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALFONSO VIDAL, individually and on behalf of all others similarly situated<br><br>*Plaintiff,*<br><br>v.<br><br>PATERSON CAR EMPORIUM LLC and EFI KLIETMEN,<br><br>*Defendants.* | Civil No. 19-cv-12711 (KSH) (CLW)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

Plaintiff Alfonso Vidal filed this collective action against his former employer, Paterson Car Emporium LLC ("PCE"), and senior employee Efi Klietman ("Klietman," with PCE, "defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et. seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1 *et seq.*  The parties reached a settlement and jointly moved for approval of their settlement agreement in November 2021, but the Court identified several substantive deficiencies in the agreement and denied their motion without prejudice.  The parties have now renewed their motion (D.E. 53) and submitted a revised settlement agreement (D.E. 53-4) for the Court's consideration.

II.      **Background**

This matter arises from Vidal's employment as a mechanic and assemblyman for PCE. (D.E. 1, Compl. ¶¶ 20-21.)  Vidal alleges that during his three-year tenure with the company, he generally worked seventy-hour weeks but was only paid a fixed weekly rate of $850.  (*Id.* ¶¶ 22-

1

23.)  He further alleges that defendants failed to adequately compensate approximately 17 other employees in furtherance of PCE's "corporate policy of minimizing labor costs and denying employees compensation."  (*Id.* ¶¶ 15-17.)

On May 20, 2019, Vidal filed a four-count complaint on behalf of himself and a class of similarly situated persons asserting violations of the FLSA, the NJWHL, and the NJWPL.  (D.E. 1.)  Vidal alleged that defendants: (i) knowingly denied him and other PCE employees overtime compensation to which they were entitled in violation of the FLSA and NJWHL; and (ii) made unlawful deductions from his wages and failed to timely pay him for his work in violation of the NJWPL.[1]  (*See* Compl. ¶¶ 32-55.)

Over the next two years, the parties engaged in discovery under the supervision of Magistrate Judge Waldor.  (*See, e.g.,* D.E. 19, 21, 27.)  On May 7, 2021, the parties informed the Court that they had reached a settlement in principle.  (D.E. 30.)  That October, they filed a joint motion for settlement approval (D.E. 38), which included a copy of the proposed settlement agreement (D.E. 38-4) and an accompanying joint letter (D.E. 38-3) setting forth legal authority and the parties' description of the terms and representations about how they were reached. However, several aspects of the settlement agreement caused the Court concern, including overly broad release and confidentiality provisions which contradicted the parties' representations in their joint letter.  Accordingly, the Court entered an order denying the motion and directing the parties to either "appear on the record . . . to clarify the provisions referenced in this order to ensure full compliance with the FLSA," or to request permission "to submit a settlement agreement with appropriately-tailored provisions."  (D.E. 48.)

---

[1] Although Vidal filed his complaint on behalf of a class, no additional plaintiffs have opted into this action.  *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) (Falk, M.J.) (FLSA class members "must affirmatively opt-in to be bound by the judgment").

The parties elected the latter option and filed an amended motion for settlement approval on June 26, 2022.  (D.E. 53.)  The motion consists of a letter (D.E. 53-3) in which the parties represent that they "edited . . . the original agreement to narrow the scope of the release and confidentiality provisions in accordance with the Court's order," as well as a proposed revised settlement agreement (D.E. 53-4).[2]  As was the case with their original motion, the revised settlement agreement requires defendants to pay a total of $8,000 allocated $2,171.06 to attorneys' fees, $1,486.80 to costs, and the balance of $4,342.14 payable to Vidal.

## III.    Discussion

### A.    FLSA Settlement Approval

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  *Genesis Healthcare Corp v. Symczyk*, 569 U.S. 66, 69 (2013).  Employers who violate those guarantees are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  *David v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)).

In the Third Circuit, district courts can settle FLSA claims in two ways: "(i) with the Department of Labor supervising the payment of unpaid minimum wages or overtime compensation under 29 U.S.C. § 216(c); or (ii) with the district court's approval of a settlement agreement under 29 U.S.C. § 216(b)."  *Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, 2021 WL 5864061, at *1 (D.N.J. Dec. 10, 2021) (O'Hearn, J.).[3]  Where, as here, the district

---

[2] The parties appear to rely on the joint letter submitted with their original motion for settlement approval which, as explained *supra*, sets forth the governing law and the parties' respective positions.  (*See* D.E. 53-6, Joint Ltr.)

[3] As explained *supra*, Vidal also asserted claims under the NJWHL and NJWPL.  However, "court approval of a settlement of those state law claims is not required."  *Davis v. Essex Cnty.*,

court is asked to approve a settlement agreement, it must ensure that the parties' compromise: (i) is "fair and reasonable"; and (ii) resolves "a bona fide dispute over FLSA provisions."  *Id.* (internal citations and quotations omitted).  The Court will address each requirement in turn.

### a.  The Proposed Settlement Agreement Resolves a Bona Fide Dispute

"A bona fide dispute exists when parties genuinely disagree about the merits of an FLSA claim—when there is factual rather than legal doubt about whether the plaintiff would succeed at trial."  *Kress v. Fulton Bank, N.A.*, 2021 WL 9031639, at *12 (D.N.J. Sept. 17, 2021) (Skahill, M.J.), *report and recommendation adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022) (Jones, J.) (quoting *Haley v. Bell-Mark Techs. Corp.*, 2019 WL 1925116, at *4 (M.D. Pa. Apr. 30, 2019)). Here, the parties sharply dispute the facts central to Vidal's FLSA claims—Vidal argues that he was not paid for the overtime hours he regularly worked, whereas defendants deny any wrongdoing and claim that he was "properly compensated for all hours worked."  (Joint Ltr. at 1-2.)  In light of the stark contrast between the parties' factual positions, the Court finds that their dispute is bona fide.

### b.  The Proposed Settlement Agreement is Fair and Reasonable

Turning, then, to whether the proposed settlement is fair and reasonable, courts in the Third Circuit "consider both (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA." *Gabrielyan v. S.O. Rose Apartments LLC*, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015) (Cecchi, J.).

### i.    Fairness to Vidal

In assessing whether the parties' compromise is fair and reasonable to Vidal, the Court

---

2015 WL 7761062, at *2, n. 1 (D.N.J. Dec. 1, 2015) (Cecchi, J.).

must analyze the factors set forth in *Girsh v. Jepson*, which include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). "The *Girsch* factors are a guide and the absence of one or more does not automatically render the settlement unfair." *Alves v. Main*, 2012 WL 6043272, at *9 (D.N.J. Dec. 4, 2012) (Cavanaugh, J.), *aff'd*, 559 F. App'x 151 (3d Cir. 2014). Accordingly, "the Court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness." *Id.* (citing *AT&T Corp. Secs. Litig.*, 455 F.3d 160 (3d Cir. 2006)).

With respect to the first, third, fourth, fifth, and seventh *Girsch* factors,[4] the parties reached their settlement after engaging in extensive attorney negotiations and formal discovery—including paper discovery and the deposition of defendant Klietman—which gave Vidal ample opportunity to assess the strengths and weaknesses of his claims and the risks associated with proceeding to trial. *See Alves*, 2012 WL 6043272, at *9 (in analyzing *Girsch* factors, "a district court should consider whether the settlement is proposed by experienced counsel who reached the agreed-upon terms through arms-length bargaining"). Furthermore, the parties' joint letter outlines defendants' "poor financial condition," which would impact their ability to pay a judgment in Vidal's favor. (*See* Joint Ltr. at 2-3.)

---

[4] Factors 2 and 6 are inapplicable because this is a single-plaintiff settlement. *See* n. 1, *supra*.

As for the eighth and ninth *Girsch* factors, the Court must consider "whether the settlement represents a good value for a weak case or a poor value for a strong case."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  Here, as explained *supra*, the parties sharply dispute the viability of Vidal's FLSA claims, and the Court is without a sufficient record to assess the merits for itself.  That said, the settlement amount—$8,000, with $4,342.14 allocated to Vidal after attorneys' fees and costs—is modest but guaranteed.  Conversely, there is no guarantee that Vidal would prevail at trial and, even if he did, that defendants would be able to satisfy a judgment in his favor.

On balance, therefore, the Court finds that the proposed settlement is fair and reasonable to Vidal.

### ii.      Implementation of the FLSA

Finally, the Court is satisfied that the parties have addressed the concerns raised in its May 26, 2022 order (D.E. 48) by narrowing the scope of the settlement agreement's release and confidentiality provisions.  *See Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *6 (D.N.J. Mar. 26, 2012) (Linares, J.) (analyzing release and confidentiality provisions in determining whether settlement frustrated the "purposes of the FLSA"); *accord Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014) (Irenas, J.).

In their original motion for settlement approval, the parties represented to the Court that Vidal was "only releasing claims related to this action," (Joint Ltr. at 3) yet the original agreement's release provision broadly applied to "any and all claims arising under" the FLSA and New Jersey law (D.E. 53-5 § 5).  In their revised settlement agreement, the parties amended the release as follows:

5. <u>Release of Claims</u>.

In consideration of his receipt of the Settlement Amount, Plaintiff knowingly and voluntarily releases and forever discharges [defendants] from any and all claims <u>related to this action</u> arising under the Fair Labor Standards Act; the New Jersey State Labor Law; or the New Jersey wage and wage hour laws; whether known or unknown, as of the date of execution of this Agreement.

(D.E. 53-4 § 5.)  This language, though still somewhat broad, is acceptable to the Court because it "does not release unrelated claims."  *Kress*, 2021 WL 9031639, at *13; *accord Singleton*, 2014 WL 3865853, at *9.

The same holds true for the parties' confidentiality provision.  In connection with their original motion, the parties represented to the Court that the confidentiality provision did not "prohibit [Vidal] or others from discussing the underlying facts or the terms of settlement with other employees of [d]efendants," (Joint Ltr. at 3), yet the agreement broadly provided as follows:

17. <u>Non-Disclosure</u>.

a. The Parties are respectively barred from disclosing the terms of this Agreement, or discussing the terms of this Agreement *with anyone except their immediate family members, financial advisors and attorneys*, unless otherwise authorized to do so by court order or to enforce the terms of this Agreement.

b. If asked about the status of this matter, the Parties shall simply indicate that it was satisfactorily resolved and provide no further information or specifics.

(D.E. 53-5 § 17 (emphasis added).)  The parties removed that provision in its entirety, and have instead inserted the following:

17. <u>Non-Cooperation</u>.

Plaintiff is expressly barred from directly or indirectly encouraging, soliciting or supporting the efforts of a third party, person or entity to assert, file or interpose a claim against Defendants or to litigate any such claim. Notwithstanding the above, Plaintiff is not barred by this Agreement from merely discussing his released claims and/or associated statutory rights. Plaintiff understands and agrees that a violation of this paragraph may subject him to the payment of damages.

7

(D.E. 53-4 § 17.)

The amended provision is acceptable to the Court.  Vidal is permitted to discuss this matter with others—including current and former PCE employees—so long as he does not encourage them to litigate their own claims against defendants.  Accordingly, Vidal "will be permitted to discuss the matter with fellow employees and others without forfeiting [his] award[]," which aligns with the purposes of the FLSA.  *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014); *accord Atis v. Freedom Mortg. Corp.*, 2018 WL 5801544, at *4 (D.N.J. Nov. 6, 2018) (Kugler, J.) (approving confidentiality provision which did not prohibit plaintiff "from publicizing the fact or terms of the settlement to the public, including Defendant's other employees").

### B.  Attorneys' Fees and Costs

Having determined that approval of the parties' proposed settlement agreement is appropriate, the Court turns to the request for attorneys' fees and costs.  *See* 29 U.S.C. § 216(b) (in approving FLSA settlement, court may "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").  In the Third Circuit, courts may evaluate whether an attorney's fee is reasonable through either the percentage-of-recovery or the lodestar approach. *See Brumley*, 2012 WL 1019337, at *3.  The former approach "allows a district court judge to award attorneys' fees as a percentage of the total fund recovered," while the latter approach "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Singleton*, 2014 WL 3865853, at *10 (internal citations and quotations omitted).

Here, Vidal's counsel requests $3,657.86 comprised of $2,171.06 in fees and $1,486.80 in costs.  The amount sought represents around 45% of the total settlement amount, which courts have permitted in the FLSA context.  *See Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 534

(E.D. Pa. 2016) (indicating that "courts have approved attorneys' fees in FLSA settlement agreements from roughly 20-45% of the settlement fund" (internal citations and quotations omitted)); *accord Mabry v. Hildebrandt*, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015).

The lodestar approach confirms that the amount sought is reasonable.  Counsel seeks reimbursement for 58.2 hours of work, an amount of time which reasonably reflects the extensive discovery and attorney negotiations that culminated in the parties' settlement.[5]  The billing statements in the record demonstrate that work was performed by four attorneys with varying degrees of legal experience at hourly rates ranging from $275-$300 for junior and mid-level associates, to $375 for a senior associate with more than 12 years of employment law experience.  (*See* D.E. 53-7.)  Similar rates have been upheld by courts in this district.  *See Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *4 (D.N.J. Oct. 21, 2016) (Arleo, J.) (approving hourly rate of $450 for partner and $375 for associate with four years of employment law experience); *Jian Zhang v. Chongqing Liuyishou Gourmet NJ Inc*, 2019 WL 6318341, at *4 (D.N.J. Nov. 26, 2019) (Cecchi, J.) (approving hourly rate of $350 for managing associate); *Punter v. Jasmin Int'l Corp.*, 2014 WL 4854446, at *7 (D.N.J. Sept. 30, 2014) (Chesler, J.) (approving hourly rate of $300 for associate with two years of employment law experience). That the $3,657.86 sought is well below the lodestar amount of $17,612.50 provides further support for counsel's position that the request is reasonable.

Accordingly, the Court will approve the request for attorneys' fees and costs.

---

[5] Vidal's counsel has not sought fees or costs associated with revising the settlement agreement. (*See* D.E. 53-3, 53-7.)

## IV.     Conclusion

For the foregoing reasons, the parties' joint motion (D.E. 53) for approval of their revised settlement agreement (D.E. 53-4) is granted.  An appropriate order will issue.

/s/ Katharine S. Hayden

Date: January 18, 2023                                                Katharine S. Hayden, U.S.D.J.